

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-21-2004

# Darchia v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2217

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Darchia v. Atty Gen USA" (2004). *2004 Decisions.* Paper 587.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/587

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2217

VIKTOR DARCHIA,

Petitioner

v.

JOHN ASHCROFT,
Attorney General of the United States,

Respondent

_____

On petition for review of a final order
of the Board of Immigration Appeals
File No:  A77-440-861
_____

Argued: March 24, 2004
_____

Before:  FUENTES, SMITH, and GIBSON,* *Circuit Judges*

(Filed: June 21, 2004)

> Jon Landau (Argued)
> Erica S. Gonzalez
> Baumann, DeSeve & Landau
> 437 Chestnut Street
> The Lafayette Building
> Philadelphia, Pennsylvania 19106

---

*The Honorable John R. Gibson, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Counsel for Petitioner

Anthony P. Nicastro (Argued)
United States Department of
        Justice
Office of Immigration Litigation
1331 Pennsylvania Avenue, N.W.
Washington, DC 20530

David V. Bernal
Ernesto H. Molina
Douglas E. Ginsburg
Lyle D. Jentzer
United States Department of
        Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC  20044

Counsel for Respondent

_____

OPINION OF THE COURT
_____

JOHN R. GIBSON, *Circuit Judge*.

Viktor Darchia, a native and citizen of Georgia, petitions for review of the decision

of the Board of Immigration Appeals denying his application for withholding of removal

and for relief under the Convention Against Torture.  Darchia contends that substantial

evidence does not support the Immigration Judge's findings (1) that Darchia's testimony

was not credible, (2) that Darchia has not suffered past persecution, and (3) that there is

2

no clear probability that Darchia would be persecuted or tortured if he were deported to Georgia. We deny review.

Darchia was admitted to this country in 1998 as a visitor from Georgia with a three-month visa. He overstayed his visa and was placed in removal proceedings. He conceded deportability, but applied for asylum, withholding of removal, and relief under the Convention Against Torture. Darchia failed to apply for asylum within a year of arriving in the United States, so he is ineligible for asylum, see 8 U.S.C. § 1158(a)(2)(B), as he now concedes. Consequently, this petition for review is limited to the question of whether Darchia is eligible for withholding of removal because of the likelihood of persecution or torture.

At his hearing, Darchia testified that he has degrees in both history and mechanical engineering. He served as head of the government housing office from 1982 to 1987 and then as head of the Management Board of Technical Inventory for the Housing Department from 1987 until he left voluntarily in 1998. In 1989 he became a member of a political party, the Popular Front, which was in opposition to the government. Darchia served as a regional-level board member for the party. He testified that on several occasions he was beaten by police while he was attending Popular Front public meetings or rallies. At a meeting on September 15, 1992, police hit him with a rubber baton, splitting open his hand and leading to a two-day hospitalization. He was again beaten with a rubber baton at a meeting on October 8, 1993, and again on May 2, 1994. On

3

February 4, 1996, there was a fight between the Popular Front and the party in control of the government; the police allowed the government's party to start a brawl, and Darchia was beaten. He testified that police beat him again at another rally, on April 10, 1997, and that he had to go to a hospital to have his shoulder relocated.

Darchia also testified that he was beaten on another occasion, when men came to his office and took him to the KGB headquarters, where they tried to get him to confess to participating in an attempt to assassinate then-Georgian President Edward Shevardnadze. He said he did not go to a hospital after that beating because it would have only made his situation worse. He said that he received threatening phone calls and that he believed he was under surveillance.

Finally, Darchia testified that when he was leaving the U.S. Consulate in Tbilisi on February 17, 1998, after applying for a visa, he was attacked and beaten.

Darchia is married to his second wife. He has two grown children from his first marriage and two minor children from his second marriage. He and his wife applied for visas to go to the United States. He received a visa, though his wife did not. In 1998 he left Georgia and came to the United States after a short stay in Moscow. Darchia's visa expired in December 1998, but he did not go home or obtain permission to remain in this country. His wife obtained a visa to visit Mexico; once there, she crossed into the United States illegally and joined Darchia in Tennessee in April 1999. Darchia and his wife were picked up at a roadblock in 1999, while on vacation in Arizona. He was given an asylum

4

application form by an Immigration Judge in Arizona, but failed to complete the form. He consulted two different attorneys about applying for asylum, but one attorney was given permission to withdraw from representing Darchia on the ground that Darchia did not cooperate with counsel. Darchia did not file an asylum application until November 9, 2000.

Darchia said he did not know whether Georgian government officials are currently investigating him, but he said that his children, who were left behind in Georgia, continue to receive telephone calls warning Darchia to stop his activities with the Popular Front and threatening him with death. Darchia's evidence consisted principally of his own testimony and asylum application, State Department reports on Georgia, the testimony of his wife, and the testimony of a Georgian asylee who had no independent knowledge of the facts of Darchia's case.

The Immigration Judge did not find Darchia's testimony or that of his witnesses to be credible. Additionally, the Immigration Judge found that Darchia's testimony, even if believed, did not prove that he had been subjected to persecution. Instead, he found Darchia only showed that the police behaved aggressively or even cruelly in keeping order at public demonstrations. Nor did the Immigration Judge find it likely that Darchia would be persecuted if he were to return to Georgia, since he was allowed to retain a lucrative position of authority within the government throughout the time he was involved in political opposition to the government. Finally, the Immigration Judge found that

5

Darchia did not show he would more likely than not be tortured if he returned to Georgia.

The Board of Immigration Appeals affirmed without opinion, pursuant to 8 C.F.R. § 1003.1(e)(4). Darchia filed a timely petition for review, and we therefore have jurisdiction under 8 U.S.C. § 1252 (2000).

Under 8 U.S.C. § 1231(b)(3)(A) (2000), the Attorney General may not remove an alien to a country if the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion. The alien bears the burden of proving a "clear probability" that his life or freedom would be threatened in the proposed country of deportation. INS v. Stevic, 467 U.S. 407, 429-30 (1984); Tarrawally v. Ashcroft, 338 F.3d 180, 186 (3d Cir. 2003).

Under the regulations implementing the Convention Against Torture, 8 C.F.R. §§ 208.16-208.18, to establish a right to protection, an alien must prove that it is more likely than not that the alien would be tortured if deported to the country proposed. 8 C.F.R. § 208.16(c).

When the Board of Immigration Appeals summarily affirms the decision of the Immigration Judge, we review the Immigration Judge's decision. Tarrawally, 338 F.3d at 184. We review the Immigration Judge's findings of fact, including credibility determinations, under the substantial evidence standard. Id. Under the substantial evidence standard, we must uphold the Immigration Judge's factual determinations unless

6

"any reasonable adjudicator would be compelled to conclude to the contrary." <u>Gao v. Ashcroft</u>, 299 F.3d 266, 272 (3d Cir. 2002) (quoting 8 U.S.C. § 1252(b)(4)(B) and <u>INS v. Elias-Zacarias</u>, 502 U.S. 478, 483-84 (1992)). Adverse credibility determinations must be based on evidence in the record, rather than speculation or conjecture. <u>Id.</u>

We conclude that the Immigration Judge's adverse credibility findings are supported by substantial evidence. The Immigration Judge rejected Darchia's various explanations for why he failed to apply for asylum promptly instead of waiting for more than two years. Even though Darchia concedes that his asylum claim is time-barred, the findings are still relevant since the Immigration Judge viewed Darchia's lack of diligence in pursuing his asylum claim as evidence that Darchia was not in fear for his life. The record supports the Immigration Judge's finding of lack of diligence, for example, in Darchia's choice to go on vacation to Arizona rather than attending to his asylum application. <u>See</u> <u>Abdulrahman v. Ashcroft</u>, 330 F.3d 587, 597 (3d Cir. 2003) (Immigration Judge's credibility determinations should be upheld if they are grounded in the record and supported by "specific cogent reasons").

The Immigration Judge also found implausible Darchia's story that, although the KGB agents beat him, Darchia did not seek medical help because it would have made his situation worse if he was asked how he came to be injured and had to reveal that it was the KGB who beat him. Darchia does not explain satisfactorily why he could not have simply declined to tell the doctors who beat him. The Immigration Judge found this

7

explanation made "absolutely no sense." This was a permissible assessment of the record evidence.

The Immigration Judge also based his assessment of Darchia's credibility on Darchia's statement that his children, whom he left in Georgia, continue to receive threats by telephone, whereas Darchia did not mention this in the forty-six paragraph affidavit filed with his asylum application. The Immigration Judge could infer that something as serious as threats to one's minor children, left behind on the other side of the world, would have made its way into an affidavit detailing the applicant's fears. The inference of fabrication was a permissible one.

We have reviewed Darchia's various other attacks on the Immigration Judge's credibility findings, and we conclude that the findings were based on substantial evidence in the record.

Next, Darchia attacks the Immigration Judge's findings that Darchia's testimony did not establish a clear probability that his life or freedom would be endangered upon return to Georgia or that he would be tortured. The Immigration Judge held that the past incidents in which Darchia was beaten during public demonstrations showed over-aggressive police crowd control measures, rather than persecution. The Immigration Judge found the possibility of future persecution remote because

> all the while [Darchia] was involved with his political party and during the period of time that he had confrontations with the police and was arrested by the police, [Darchia] continued in his important positions with the government of Georgia. He was never dismissed from those jobs. If,

8

indeed, the government wished to harm him in some fashion, this, I believe, would have been done by removing him from his positions of authority within the government itself.

Darchia's wife, a lawyer, testified that the Georgian government could not establish a tie between Darchia and the assassination attempt that would support a prosecution and therefore the government did not pursue Darchia further than questioning him on the one occasion. Her testimony confirms that Darchia was not in continued danger because of the allegation that he participated in the assassination plot. The Immigration Judge's conclusions were supported by substantial evidence in the record.

We deny review.